UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRIAN CANNON,                          )
                                       )
          Petitioner,                  )
                                       )
v.                                     )          No. 4:20 CV 742 RWS
                                       )
DAVID VANDERGRIFF,                     )
                                       )
          Respondent.                  )

## MEMORANDUM AND ORDER

This case is before me on the petition of Brian Cannon for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Cannon asserts four grounds for relief in his petition.

Cannon's petition is untimely and he is not entitled to equitable tolling. Moreover, all four grounds for relief lack merit, and the fourth ground is procedurally defaulted.  As a result, I will deny Cannon's petition.

## BACKGROUND

On March 6, 2014, a jury convicted Cannon of first-degree assault of a law enforcement officer, armed criminal action, two counts of first-degree burglary, two counts of stealing a motor vehicle, first-degree trespass, stealing over $500, and unlawful possession of a firearm.  On April 11, 2014, the trial court sentenced Cannon to consecutive terms of life imprisonment for first-degree assault of a law

enforcement officer and armed criminal action, and twenty years for first-degree burglary.  Those sentences are concurrent with terms of twenty years for the second count of first-degree burglary, seven years for each count of stealing and unlawful possession of a firearm, and six months for trespassing.

On September 15, 2015, the Missouri Court of Appeals affirmed Cannon's convictions and sentences.  Cannon did not file a motion for rehearing or application for transfer with the Missouri Court of Appeals, and the judgment became final on September 30, 2015.  On December 16, 2015, Cannon filed a *pro se* application for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.   The Missouri Court of Appeals issued its mandate denying Cannon's post-conviction appeal on August 2, 2019.  Cannon then filed his petition for writ of habeas corpus on May 24, 2020.

The Missouri Court of Appeals described the factual and procedural background of this case as follows:

> In May 2012, Defendant went to his friend's apartment in Florissant. He told his friend that he was going to a party and showed her a handgun that he was planning to show off at the party. He left the apartment in the early hours of the morning. Defendant did not go to a party. Instead, he went into a home on Horseshoe Drive. In the home, Defendant took a purse and keys to a Honda Pilot, which he drove for a while and then abandoned. Then, Defendant broke into a Pontiac Grand Am that was parked in the driveway of a house on Hackney Drive. From the Pontiac, Defendant stole a purse, some change, and some items from the glovebox. Then, Defendant walked to another house on Banstead Drive. He pried open the patio door with a screwdriver, entered the house and took a television. The alarm on the Banstead house went off.

2

Defendant left the house and went into the backyard of a house nearby. He set the television on the patio and left the purse stolen from the Pontiac as well.

A police officer reported to the Banstead house. He saw that the back door was open and determined that the intruder was fleeing the scene. On his police radio, he informed the other officers that he believed the intruder was headed toward the intersection of Hackney Drive and Sorrell Drive.

Defendant had, in fact, run in the direction the officer believed. Defendant ran to the Surrey Plaza shopping center, near the intersection of Hackney and Sorrell. Defendant hid in a dumpster in an alley behind the shopping center. He called his friend and asked her to pick him up.

Officer Michael Vernon heard the radio call about the suspect fleeing toward Hackney and Sorrell. Officer Vernon drove down an alley behind Surrey Plaza. He got out of his vehicle and saw a piece of clothing he thought may have belonged to the suspect. After determining the piece of clothing was old, Officer Vernon looked around, then decided to head back to his vehicle. He heard something in the dumpster, but continued toward his car. Defendant jumped up and shot at Officer Vernon, who first felt a shot in his calf. Two more bullets hit Officer Vernon, one of which hit his vertebrae and paralyzed him. The other shot entered Officer Vernon's lung. Defendant fled. Officer Vernon fell to the ground and could not move. Another officer arrived at the scene. Officer Vernon was conscious and gave the other officers a description of the shooter—black male with dreadlocks, wearing a white t-shirt and carrying a chrome handgun.

Defendant ran across Lindbergh and into another residential area. He removed his t-shirt and stole a Dodge Caravan. Again, he called his friend and asked for help. When his friend arrived in the area, Defendant abandoned the Dodge and went to his friend's car. Because of the amount of police presence in the neighborhood, Defendant left his friend's car and ran back into the residential area. During this time, police officers and canine units were searching for Defendant in the area and spotted him. One of the patrol canines, Miko, picked up Defendant's scent and tracked him into a garage on Brunswick Drive. When Defendant refused to exit the garage, he was tased by an officer and subsequently arrested. Officers found Defendant's gun in a backyard of the residential neighborhood.

3

Defendant was taken to the police station, then to the hospital, where he refused treatment and said he was fine. The officers took Defendant back to the police station where he was interviewed by two officers. Before the interview, the officers advised Defendant of his Miranda1 rights. During the interview, Defendant admitted to all of the crimes, but said that when he shot Officer Vernon, he did not know he was shooting a police officer. The officers took Defendant back to the dumpster where he had been hiding earlier and they created a video re-enactment.

Before trial, Defendant filed a motion to suppress his statements to police officers at the station, as well as the video re-enactment. The trial court denied both motions. At trial, the State presented the testimony of the officer who responded to the house on Banstead; the two officers who responded to the scene where Officer Vernon was shot; the officer of the canine patrol unit that tracked Defendant to the garage; Detective Rofling, who interviewed Defendant at the police station; and Officer Vernon. Defendant testified in his defense. The jury found Defendant guilty of all counts and he was sentenced to consecutive terms of life imprisonment for first-degree assault of a law enforcement officer and armed criminal action, and twenty years for first-degree burglary. Those sentences were concurrent with terms of twenty years for the other count of first-degree burglary, seven years for each count of stealing and unlawful possession of a firearm, and six months for trespassing.

ECF No. 14-5 at 2–4.

In his petition for writ of habeas corpus, Cannon raises four grounds for relief:

(1) His sentence exceeds the maximum penalty authorized by Missouri law because his felony stealing offenses were enhanced from misdemeanors to felonies;

(2) His trial counsel provided ineffective assistance by failing to move for a mistrial because a juror had dozed off during testimony;

(3) His trial counsel provided ineffective assistance by failing to request that the trial court define the term "knowingly" as it appeared in the jury instruction for first-degree assault of a law enforcement officer; and

(4) His trial counsel provided ineffective assistance by objecting to the court's submission of a definition of the term "knowingly" to the jury during deliberations after the jury requested a definition of the term.

ECF No. 1.  Respondent asserts that Cannon's petition should be dismissed as untimely.  Notwithstanding timeliness, Respondent asserts that Cannon's fourth claim is procedurally defaulted and that all four claims lack merit.

## LEGAL STANDARD

Federal courts are authorized to issue habeas relief for state prisoners pursuant to 28 U.S.C § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  But this power is limited to "only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Id.*  Notwithstanding narrow exceptions, federal courts may not grant such applications if the applicant has not exhausted state remedies.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

For claims adjudicated on the merits in state court proceedings, federal courts may issue habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

An adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An adjudication is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* The standard requires an objectively unreasonable application of federal law; a merely incorrect application is not sufficient. *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Thus, to obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up). This standard is difficult to meet. *Id.* at 357–58.

As with legal findings, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

6

# DISCUSSION

## A. Timeliness of Cannon's Petition

The AEDPA restricts the window during which a prisoner may file a petition for writ of habeas corpus to one year from the time the state court judgment is made final.  § 2244(d)(1)(A).  This statute of limitations is tolled during post-conviction review proceedings but resumes the day after the post-conviction review court issues its mandate.  § 2244(d)(2); *see King v. Hobbs*, 666 F.3d 1132, 1136 (8th Cir. 2012) (applying Fed. R. Civ. P. 6(a)(1)(A) to the AEDPA).

Here, the state court judgment became final on September 30, 2015 after the fifteen-day time period expired for Cannon to seek further direct review.  The statute of limitations under the AEDPA began running one day later on October 1, 2015.  It ran for seventy-seven days until it was tolled by Cannon's application for post-conviction review on December 16, 2015.  After the mandate issued in his post-conviction review proceedings on August 1, 2019, another 297 days elapsed before Cannon filed his petition for writ of habeas corpus on May 24, 2020.

Excluding the time during which the statute of limitations was tolled for post-conviction review proceedings, Cannon filed his petition for writ of habeas corpus 374 days after the judgment became final and nine days after the deadline of May 15, 2020.  Thus, his petition is not timely under § 2244(d)(1)(A).

## B. Equitable Tolling

In Cannon's response to the magistrate court's show cause order, he provides three reasons why his petition should not be dismissed for untimeliness:

> (1) He has been in administrative segregation for the majority of the one-year window prescribed by the AEDPA, where he did not have access to legal materials;
>
> (2) His public defender misinformed him he had until August 1, 2020 to file his petition; and
>
> (3) He did not have access to legal materials while the prison was on lockdown because of the COVID-19 pandemic.

ECF No. 7.

Under the doctrine of equitable tolling, courts may "afford[] the otherwise time-barred petitioner an exceedingly narrow window of relief." *Chachanko v. United States*, 935 F.3d 627, 629 (8th Cir. 2019) (internal citation omitted). But "[e]quitable tolling is an 'extraordinary' remedy," *id.*, that can be granted "only if [Cannon] shows '(1) that he has been pursuing rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal citation omitted).

"The diligence required for equitable tolling purposes is 'reasonable diligence.'" *Id.* at 653. Such diligence may occur when a petitioner:

> writes letters to his attorney asking her to file a habeas petition, contacts the court to learn about the status of his case, seeks to have his attorney removed for failure to pursue his case, and files a pro se petition the very day that he learns it is late.

*Williams v. Kelly*, 830 F.3d 770, 773 (8th Cir. 2016) (citing *Holland*, 560 U.S. at 653).

1.  Administrative Segregation

Here, Cannon's response to the show cause order does not argue that he took any action on his habeas petition during the sixty-eight days before his placement in administrative segregation.  ECF No. 7.  Rather, the record shows that during his placement among the general population, Cannon focused less on his habeas petition and more on engaging in prohibited conduct.[1]

Nor did Cannon act with reasonable diligence during his placement in administrative segregation.  Cannon alleges he was unable to pursue his petition because he was denied legal materials, but his actions do not support that claim. While in administrative segregation, Cannon exchanged letters with his post-conviction counsel, filed his habeas petition, and received and responded to the magistrate court's show cause order.  *Cf. Muhammad v. United States*, 735 F.3d 812,

---

[1] *See* ECF No. 16-1.  Cannon was first placed in administrative segregation on October 8, 2019 after a prison officer found him in possession of tobacco and a green leafy substance.  After the officer confiscated the contraband from Cannon, he attempted to repossess it by striking the officer.  Cannon was returned to the general population on March 8, 2020.  One day later, on March 9, 2020, a prison officer found Cannon in possession of a brown leafy substance, which was later identified as K2.  Cannon then overdosed on the substance.  After a prison officer attempted to restrain him, Cannon began striking the officer with a closed fist numerous times to the face. He was then returned to administrative segregation. *Id.*

815 (8th Cir. 2013) (special confinement did not prevent petitioner from meeting the statute of limitations when he had sent letters and contacted the court from there).

Lack of legal resources is also not an extraordinary circumstance that gives rise to equitable tolling. *See id.* (citing *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000). Regardless, "an extraordinary circumstance must be 'beyond a prisoner's control.'" *Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017) (internal citation omitted). Here, Cannon's placement in administrative segregation was not outside his control. As shown in the conduct violation reports, Cannon was placed there for repeatedly abusing illicit substances and assaulting prison officers. *See* ECF No. 16-1. Because Cannon has not acted with reasonable diligence or shown some extraordinary circumstance, equitable tolling will not be granted on this basis.

2. Counsel Miscalculation

Equitable tolling is not warranted for attorney error unless the facts present "serious instances of attorney misconduct." *Holland*, 560 U.S. at 652. But "attorney miscalculation [of deadlines] is simply not sufficient to warrant equitable tolling." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Because Cannon's attorney's miscalculation of the deadline is "a garden variety claim of excusable neglect," equitable tolling will not be granted on this basis. *See Holland*, 560 U.S. at 651 (quoting *Irwin v. Dep't of Veteran Affs.*, 498 U.S. 89, 96 (1990)).

10

3. <u>COVID-19</u>

Cannon's claim that COVID-19 prevented him from timely filing his habeas petition is functionally equivalent to his claim concerning administrative segregation. Like the time he had before being placed in administrative segregation, Cannon had several months to exercise reasonable diligence before COVID-19 restrictions were implemented. The mandate issued in his post-conviction appeal on August 19, 2019, and the Missouri Department of Corrections did not begin implementing COVID-19 prevention measures until March 2020.[2]

Regardless of his diligence, Cannon's only assertion is that the COVID-19 restrictions prevented him from accessing legal materials. As discussed above, that is not an extraordinary circumstance that warrants equitable tolling. *Muhammad*, 735 F.3d at 815 (citing *Kreutzer*, 231 F.3d at 463). Because Cannon has not acted with reasonable diligence or shown some extraordinary circumstance, equitable tolling will not be granted on this basis.

**C. Review on the Merits**

Even if Cannon had timely filed his petition, I find that his claims are without merit and/or procedurally defaulted.

---

[2] *See, e.g.*, Bulletin, Missouri Dep't Corrections, COVID-19 Update, https://content.govdelivery.com/accounts/MODOC/bulletins/280ff24.

1. <u>Ground One: His sentence exceeds the maximum penalty authorized by Missouri law because his felony stealing offenses were enhanced from misdemeanors to felonies</u>

In Ground One, Cannon claims his sentences are excessive because his misdemeanor stealing offenses were enhanced to felonies under Missouri's felony stealing enhancement statute.  The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

> In Point III, Appellant alleges the motion court erred in denying his post-conviction motion without an evidentiary hearing [on whether] Appellant's seven-year sentences on Counts VI, VII, and IX exceeded the maximum punishment allowable by law for stealing as interpreted in *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016).
>
> The motion court found Appellant's claim was precluded by the holding in *State ex rel. Windeknecht v. Mesmer*, 530 S.W.3d 500 (Mo. banc 2017). In *Windeknecht*, the Court held "the *Bazell* holding only applies forward, except those cases pending on direct appeal." *Id.* at 503.
>
> Appellant first claims he is entitled to relief because "the opinion in *Bazell* was based on statutory construction of a preexisting statute, and not a new rule of law." Appellant relies upon *Thornton v. Denney*, 467 S.W.3d 292 (Mo. App. W.D. 2015), for the proposition that the issue of retroactivity does not arise when the Missouri Supreme Court merely clarifies an existing statute. However, this Court rejected that argument in *Whittley v. State*, 559 S.W.3d 401 (Mo. App. E.D. 2018). In *Whittley*, this Court found the exact argument without merit, stating "our Supreme Court exercised its authority to only apply *Bazell*'s holding, which established a different interpretation of Section 570.030, prospectively except for cases pending on direct appeal." *Id.* at 405.
>
> Appellant then claims his case is distinguishable from *Windeknecht*, because there the petitioners brought a claim for habeas relief. Our Court has rejected this argument. *See Bosworth v. State*, 559 S.W.3d 5 (Mo. App. E.D. 2018). "This argument erroneously conflates procedural cognizability with substantive merit. Though a *Bazell* claim that a sentence has been unlawfully entered may be procedurally cognizable under Rule 24.035 in a strictly

technical sense, a *Bazell* claim asserted pursuant to Rule 24.035 is substantively without merit as a matter of law." *Id.* at 10.

Appellant lastly argues that "*Windeknecht* and its progeny should not be followed," claiming "the Court's opinion in *Windeknecht* directly conflicts with the Court's own jurisprudence." This Court and the motion court are bound by Missouri Supreme Court decisions. MO. CONST. art. V, sec. 2. Our role is not to review our Supreme Court's decisions, but rather to determine whether the motion court clearly erred in its decision.

We find the motion court did not clearly err. Point III is denied.

ECF No. 14-9 at 14–15 (cleaned up).

Cannon's first claim does not present a basis for federal habeas relief because it improperly asks for relief based on the Missouri Supreme Court's interpretation of Missouri law.  States are not constitutionally compelled to make retroactive different interpretations of state statutes. *See Wainwright v. Stone*, 414 U.S. 21, 23–24 (1973).  And "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Ground One of Cannon's habeas petition will be denied.

2. Ground Two: His trial counsel provided ineffective assistance by failing to move for a mistrial because a juror had dozed off during testimony

In Ground Two, Cannon claims he was denied effective assistance of counsel because his trial counsel did not move for a mistrial after a juror dozed off during testimony.  The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

In Point II, Appellant alleges the motion court erred in denying his post-conviction motion without an evidentiary hearing because counsel was ineffective for failing to move for a mistrial because Juror No. 9 was sleeping and unqualified to serve on Appellant's jury, and there was not an alternate juror available.

"To warrant an evidentiary hearing, movant's motion must meet three requirements: (1) it must contain facts, not conclusions, which if true would warrant relief; (2) the alleged facts must not be refuted by the record; and (3) the matters complained of must have resulted in prejudice to the movant." *Grace v. State*, 313 S.W.3d 230, 233 (Mo. App. E.D. 2010). "Movant bears the burden of pleading sufficient factual allegations of prejudice as a result of trial counsel's failure." *Vann v. State*, 26 S.W.3d 377, 381 (Mo. App. S.D. 2000). "[T]he mere allegation that a juror appear[s] to be sleeping is not sufficient to prove prejudice." *Jones v. State*, 514 S.W.3d 72, 85 (Mo. App. E.D. 2017) (quoting *Johnson v. State*, 406 S.W.3d 892, 906 (Mo. banc 2013)).

"In order to prevail on a claim of ineffective assistance for failing to take action regarding a sleeping juror, Movant had to prove that the juror was in fact sleeping during the proceedings and that Movant suffered actual prejudice as a result." *Jackson v. State*, 535 S.W.3d 374, 380 (Mo. App. E.D. 2017).

"Mistrial is a drastic remedy only to be exercised in extraordinary circumstances where there is no other way to remove the prejudice to the defendant." *Bracken v. State*, 453 S.W.3d 866, 873 (Mo. App. E.D. 2015) (quoting *Jones v. State*, 389 S.W.3d 253, 259 (Mo. App. E.D. 2012)). "To show prejudice, the movant must demonstrate that a mistrial would have been granted by the court had it been requested." *Id.* "Counsel will not be deemed ineffective for failing to request a mistrial that would not have been granted." *Id.*

In his amended motion, Appellant alleged trial counsel was "ineffective for failing to move for a mistrial when they discovered that juror nine had dozed off during the end of the day's testimony of the second day of trial." The motion court denied Appellant's request for an evidentiary hearing, finding he failed to demonstrate prejudice as required by Rule 29.15. Appellant claims "[t]he record further reflects that juror nine dozed through trial testimony about the apprehension and arrest of [Appellant] ...." However, the record does not reflect Juror No. 9 was dozing. Rather, the record shows the

14

following conversation between trial counsel and the court regarding Juror No. 9 being asleep:

> [Counsel]: Juror No. 9 at some point was dozing off towards the end there. Maybe we should take more breaks throughout the day?
> [The Court]: Well, I didn't see that, and I was kind of watching them. But I'll take your word for it. I didn't see it.
> [Counsel]: Several times, Judge.
> [The Court]: I don't think to the extent that – Juror No. 3 closed his eyes a couple of times. That happens, but certainly not the extent as I observed with Juror No. 12. So anything further?
> [Counsel]: No, Judge.

This testimony is the only reference to Juror No. 9 falling asleep in the one-thousand-page transcript, and does not show that the juror was asleep, but rather that defense counsel believed the juror was dozing. Additionally, the court made reference to Juror No. 12, who was previously removed from the jury for sleeping. Juror No. 12 had fallen asleep and was snoring during trial when defense counsel brought it to the attention of the court. The court decided to remove Juror No. 12 from the jury, because the court was "really concerned that she [was] not paying attention and [was] not able to give full consideration of the evidence that's been presented so far …"

"The mere fact that a juror slept during the trial does not entitle to Movant to relief, he must have been prejudiced by that sleeping." *Vann*, 26 S.W.3d at 381. Appellant alleges that "[w]hile juror nine was sleeping that afternoon of trial, canine (K9) officer Jarrod Coder had testified about tracking Movant Cannon to the rear garage at … Florissant, Missouri, where officers had apprehended and arrested Movant Cannon." He further alleged "Juror nine likely heard some but not all of that testimony."

Even if Juror No. 9 was dozing during the testimony of the K9 officer, Appellant did not adequately allege facts showing prejudice. *See Jones*, 514 S.W.3d at 85 ("Movant fails to identify what specific evidence the juror missed or what portion of Dr. Ophoven's testimony he did not hear, and only concluded he missed 'crucial evidence.'"). The testimony of Officer Coder related to identifying Appellant. Appellant admitted shooting Officer Vernon. None of the evidence presented by Officer Coder went towards the issue in dispute for the jury – whether Appellant knew Officer Vernon was a law enforcement officer.

Appellant fails to point to any testimony Juror No. 9 might has missed that would have been in any way exculpatory or outcome-determinative. Point II is denied.

ECF No. 14-9 at 11–14 (cleaned up).

Cannon's ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test to determine when counsel's ineffective performance violates the Sixth Amendment.   First, the petitioner "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  Second, the petitioner must "show that the deficient performance prejudiced the defense." *Id.*  To demonstrate prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance." *Id.* at 690. "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v.*

*Pinholster*, 563 U.S. 170, 202 (2011)).  This means that Cannon must do more than "show that she would have satisfied *Strickland's* test if her claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (cleaned up).  "Rather, he must show that the [Missouri Court of Appeals] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699 (cleaned up).

Here, the Missouri Court of Appeals reasonably concluded that Cannon did not demonstrate prejudice from his counsel's failure to request a mistrial because of a dozing juror.  As the state court noted, the record does not reflect that the juror was dozing, and none of the testimony that the juror might have missed concerned a disputed issue.  *See* § 2254(e)(1) ("a determination of a factual issue by a State court shall be presumed to be correct").  Nor did Cannon specifically identify any missed testimony that could have undermined confidence in the outcome.  *See United States v. Tierney*, 947 F.2d 854, 868–869 (8th Cir. 1991) (vague assertions of sleeping jurors are insufficient to establish prejudice).  Because the Missouri Court of Appeals reasonably applied *Strickland* to Cannon's second claim, Ground Two of Cannon's habeas petition will be denied.

3.  <u>Ground Three: His trial counsel provided ineffective assistance by failing to request that the trial court define the term "knowingly" as it appeared in the jury instruction for first-degree assault of a law enforcement officer</u>

In Ground Three, Cannon claims he was denied effective assistance of counsel because his trial counsel did not request that the trial court define the term "knowingly" as it appeared in the jury instruction for first-degree assault of a law enforcement officer**.**  The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

> In Point I, Appellant alleges he should have been granted an evidentiary hearing because the record did not conclusively refute his claim of ineffective assistance of trial counsel for failure to request the definition of "knowingly" be included in the verdict director for Count I, first-degree assault of a law enforcement officer.
>
> A claim of ineffective assistance cannot be based on reasonable choices of trial strategy. *Lawrence v. State*, 160 S.W.3d 825, 829 (Mo. App. S.D. 2005). "Therefore, in attempting to satisfy the first prong of the test, Movant must overcome the presumption that the challenged action was a decision appropriately made in the exercise of professional judgment." *Id.* (citing *Jameson v. State*, 125 S.W.3d 885, 890 (Mo. App. E.D. 2004)).
>
> Counsel was required to make a choice whether or not to include the definition of "knowingly" in the verdict director. MAI-CR3d 319.32 Notes on Use 6(a) states "[w]hen the following terms are used in this instruction, the paragraph defining that term must be used: 'attempt,' 'corrections officer,' 'emergency personnel,' 'serious physical injury.'" However, Notes on Use 6(b) states, "The following terms, if used in the instruction, may be defined by the court on its own motion and must be defined upon written request in proper form by the state or by the defendant: 'knowingly,' 'law enforcement officer.'"
>
> In *Manwarren v. State*, the defendant was convicted of child endangerment in the first degree and appealed. 223 S.W.3d 899 (2007). The defendant claimed he received ineffective assistance of counsel because his trial counsel did not request the inclusion of the definition of "knowingly," when the Notes on Use

provided that "the term 'knowingly' may be defined by the Court on its own motion and must be defined upon written request in proper form by the state or by the defendant." *Id.* at 903. The defendant argued "that because his mental state was the central issue in his defense, the jury was left with a more general layman's understanding of knowingly, which served to deprive jurors of an adequate basis upon which to distinguish Movant's mental state and the other culpable mental states from the legal requirements of knowingly." *Id.* at 902 (internal quotations removed).

The reviewing court, however, stated "[a]n objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." *Id.* at 904 (quoting *Young v. State*, 761 S.W.2d 725, 727 (Mo. App. 1988)). The court went on to say "[e]ven where it had been determined that failure to define a specific type of intent or mental state was erroneous, the error was found not to be reversible when the term was used in its ordinary and commonly understand meaning and did not confuse or mislead the jury." *Manwarren*, 223 S.W.3d at 904. The court found "the common definition of knowingly is in a knowing manner with awareness, deliberateness, or intention and is consistent with the definition set forth in [the jury instructions]." *Id.* (internal quotations omitted).

In the present case, the lower court found Appellant failed to allege facts, not conclusions, which rebutted the strong presumption that counsel did not request the definition be included as a matter of trial strategy. Appellant's motion alleges "[r]easonably competent attorneys under the same or similar circumstances would have requested that the trial court define the term 'knowingly' in the verdict director for Count I because the only contested issue for the jury to decide at trial was … intent." However, the fact Appellant's intent was the only contested issue is insufficient to rebut the presumption that trial counsel had a strategy when refraining from requesting the instruction. In an attempt to rebut this presumption, Appellant's motion alleges "[n]o reasonable trial strategy reason justified trial counsel's failure." This allegation is merely conclusory and fails to allege any facts that show trial counsel lacked a reasonable trial strategy.

On appeal, Appellant argues because there was no evidentiary hearing held, "the motion court's conclusion that trial strategy justified counsel's failure is mere speculation and should be rejected as unsupported by the record." Appellant's argument fails to take into consideration that "[a]n evidentiary hearing is not required if the motion, files, and records of the case conclusively

19

show that the movant is not entitled to relief. A consideration of the record as a whole can demonstrate that an alleged dereliction was in fact a part of trial strategy and no evidentiary hearing is necessary." *State v. Butler*, 904 S.W.2d 68, 73 (Mo. App. E.D. 1995) (internal citations omitted).

Here, a review of the record as a whole demonstrates the decision not to request the definition was reasonable trial strategy. When the jury requested the legal definition of the word "knowingly," Appellant's counsel objected to the definition being provided, despite the State indicating it had no objection. Further, the instructions provided contained the definitions for all of the words that were required to be defined but did not include the definitions of any words that would be permitted if requested by either party, implying trial counsel was aware of MAI-CR3d 319.32 Notes on Use 6. The record as a whole supports the presumption trial counsel exercised reasonable judgment in omitting the definition as a matter of trial strategy. Appellant's conclusory allegation that no such strategy existed, devoid of factual support, is insufficient to rebut that presumption.

Even if it was error to fail to request the definition of "knowingly," Appellant failed to allege facts in his amended motion that showed he suffered prejudice as a result of the failure to request the instruction. "In the context of Movant's claim here, prejudice is the potential for confusing or misleading the jury." *Manwarren*, 223 S.W.3d at 903 (internal citations and quotations omitted.) Because the word "knowingly" was used in its ordinary and commonly understood meaning in the jury instructions, there was no prejudice suffered by Appellant as he fails to articulate how there was potential to confuse or mislead the jury.

Point I is denied.

ECF No. 14-9 at 8–11 (cleaned up).

As with Ground Two, Ground Three of Cannon's habeas petition is governed by *Strickland*.  To succeed under Strickland, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (internal citation omitted); *see Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (reasonable "strategic

choices . . . are virtually unchallengeable).  Here, the Missouri Court of Appeals reasonably concluded that the decision not to request the definition of "knowingly" was reasonable trial strategy.  And Cannon has not provided any factual support to prove no such strategy existed.  Because Cannon fails to show his counsel's representation was deficient under *Strickland*, I need not address whether he was prejudiced.  Ground Three of Cannon's habeas petition will be denied.

4. <u>Ground Four: His trial counsel provided ineffective assistance by objecting to the court's submission of a definition of the term "knowingly" to the jury during deliberations after the jury requested a definition of the term</u>

In Ground Four, Cannon claims he was denied effective assistance of counsel because his trial counsel objected to the court's submission of a definition of the term "knowingly" to the jury during deliberations after the jury requested a definition of the term.  This claim is procedurally defaulted because Cannon did not reassert it in his post-conviction appeal after raising it in his Rule 29.15 motion.  *See Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (claims are procedurally defaulted if not presented to state courts at all stages of direct appeal and post-conviction proceedings).

Federal courts may not reach the merits of procedurally defaulted claims unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750

(1991) (cleaned up).  To demonstrate cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  But "the failure to preserve claims on appeal from a postconviction proceeding can[not] constitute cause." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

Here, Cannon offers no cause for his failure to reassert his claim in accordance with state procedural rules.  Nor does his claim fall within the equitable rule announced in *Martinez v. Ryan*, 566 U.S. 1 (2012), because it procedurally defaulted on Cannon's appeal of the denial of his motion for post-conviction relief, not the initial review of her motion for post-conviction relief.  *See Franklin v. Hawley*, 879 F.3d 307, 313 (8th Cir. 2018).

Regardless of procedural default, Cannon's fourth claim is also meritless under *Strickland*.  Objections are generally considered part of "the larger strategic plan for the trial." *See Gonzalez v. United States*, 553 U.S. 242, 249 (2008).  And such strategic decisions are entitled to deference. *See Hinton*, 571 U.S. at 274.  But even if Cannon's counsel was deficient, the motion court that denied this claim reasonably concluded that no prejudice resulted because Cannon admitted to committing the offenses and therefore "a guilty jury verdict was a foregone conclusion." *See* Doc. 14-8 at 122, 155.  As a result, Ground Four of Cannon's habeas petition will be denied.

## CONCLUSION

I will deny Cannon's petition for writ of habeas corpus because his petition is untimely and not entitled to equitable tolling, and because his claims are without merit and/or procedurally defaulted.  I will also decline to issue a certificate of appealability because Cannon has not made a substantial showing of the denial of a federal constitutional right.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Brian Cannon for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability under 28 U.S.C. § 2253.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September 2023.